# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL CASE NO. 1:09cv455

| | | |
|---|---|---|
| **JAMES GREGORY WARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| **CIGNA LIFE INSURANCE** | ) | |
| **COMPANY OF NEW YORK,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the following:

1.    The Plaintiff's Motion to Amend Complaint [Doc. 17];

2.    The Plaintiff's Motion for Summary Judgment [Doc. 19];

3.    Cigna Life Insurance Company of New York's Cross-Motion for Summary Judgment [Doc. 25];

4.    The Plaintiff's Motion to Exclude [Doc. 27].

## PROCEDURAL HISTORY

On December 17, 2009, the Defendant Cigna Life Insurance Company of New York (Cigna) removed this action from the North Carolina Superior Court for Madison County based on federal question jurisdiction. [Doc. 1]. In

the Complaint, the Plaintiff seeks an award of long-term disability benefits pursuant to an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et. seq.* [Doc. 1-1]. The Plaintiff did not move to remand this matter to state court.

The parties filed a certification of initial attorney's conference in which they agreed:

> [This] action is governed by [ERISA], so that discovery, if any, will be limited in scope. The parties agree in this case that discovery outside of the administrative record appears unnecessary. However, once Plaintiff receives the administrative record from Defendants, if Plaintiff believes that there are items missing from the administrative record, Plaintiff will seek discovery of these items on or before February 23, 2010.

[Doc. 5, at 1-2].

In accordance with the parties' certification, the Court entered a Scheduling Order. [Doc. 6]. On March 19, 2010, Cigna filed the administrative record. [Docs. 12, 13 & 14]. The pending motions followed shortly thereafter.

## MOTION TO AMEND COMPLAINT

The Court first considers the Plaintiff's motion to amend the Complaint, which is opposed by Cigna. The Plaintiff claims that Cigna never ruled on or responded to his March 19, 2008 appeal of the denial of his application for long-term disability benefits. As a result, he seeks to add a claim for unfair claims settlement practices pursuant to N.C.Gen.Stat. §58-63–15 and unfair

trade practices pursuant to N.C.Gen.Stat. §75-1.1.  Cigna opposes such an amendment as futile because any such claims are preempted by ERISA.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."  Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).  In order to accomplish this purpose, ERISA includes expansive preemption provisions "which are intended to ensure that employee benefit plan regulation [is] exclusively a federal concern."  Id.  Here, the Plaintiff has admitted that the plan at issue "is an employee benefit plan governed by [ERISA]." [Doc. 1-1, at 4; Doc. 5, at 1 ("[This] action is governed by [ERISA], so that discovery, if any, will be limited in scope.")].

> [T]he detailed provisions of §502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

Aetna, 542 U.S. at 208.

In enacting the civil enforcement scheme of ERISA, Congress made "clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be

treated as federal questions governed by §502(a)." <u>Pilot Life Ins. Co. v.</u> <u>Dedeaux</u>, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), *abrogated in part on other grounds* <u>Ky. Ass'n of Health Plans, Inc. v. Miller</u>, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). "Accomplishment of the objectives of ERISA is facilitated by its preemption clause, ... which protects the administrators of employee benefit plans from 'the threat of conflicting and inconsistent State and local regulation." <u>Gresham v. Lumbermen's Mut. Cas.</u> <u>Co.</u>, 404 F.3d 253, 258 (4th Cir. 2005), *quoting* <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 99, 103 S.Ct. 2890, 72 L.Ed.2d 490 (1983) (other citations omitted). The term "state laws," as used in [ERISA], includes common law causes of action as well as statutory claims. <u>Id</u>. ERISA Section 502(a)(1)(B) provides that a civil action may be brought by a plan participant "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan[.]" 29 U.S.C. §1132(a)(1)(B). "The Supreme Court has determined that ERISA's civil enforcement provision, §502(a), completely preempts state law claims that come within its scope and converts these state claims into federal claims under §502." <u>Darcangelo v. Verizon</u> <u>Communications, Inc.</u>, 292 F.3d 181, 187 (4th Cir. 2002).

Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Smith v. Jefferson Pilot Financial Ins. Co., 367 F.Supp.2d 839, 842 (M.D.N.C. 2005).

> As the basis for [his] state law claims, plaintiff cites sections 58-63-15(11) and 75-1.1 of the General Statutes of North Carolina. While section 58-63-15, by its own terms, limits enforcement to the Commissioner of Insurance, North Carolina courts have allowed other parties to seek recovery under section 75-1.1 for the acts of insurance companies which would be prohibited under section 58-63-15[.] ... It is clear that [the proposed amended claim] is based entirely on the contention that [the Plaintiff] has been denied disability benefits under the terms of an insurance policy which, because it was obtained for [his] benefit by [his] employer, constitutes an employee benefit plan. [His] claim falls under that comprehensive civil enforcement scheme envisioned by ERISA and is remediable under §502(a).

Id., at 843.

The Plaintiff's proposed claims pursuant to N.C.Gen.Stat. §§58-63-15 & 75-1.1 are therefore entirely preempted by ERISA. Hotz v. Blue Cross and Blue Shield of Mass., Inc., 292 F.3d 57 (1st Cir. 2002) (unfair trade practice claim preempted); Caffey v. Unum Life Ins. Co., 302 F.3d 576 (6th Cir. 2002) (all state law claims stemming from processing of claim for benefits preempted); Freeman v. Principal Financial Group, 117 F.3d 1425 (9th Cir. 1997) (state statutory claim for unfair settlement practices preempted); accord, Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc., 57 F.3d 1040 (11th Cir. 1995); Tri-State Mach., Inc. v. Nationwide Life Ins. Co., 33 F.3d

309 (4th Cir. 1994), *certiorari denied* 513 U.S. 1183, 115 S.Ct. 1175, 130

L.Ed.2d 1128 (1995) (claims of improper claims processing and unfair trade

practices preempted); Patrick v. Calgon Carbon Corp., 2010 WL 4629993

(S.D.W.Va. 2010) (unfair trade practices preempted); Bonner v. Union Pacific

Flexible Program, 2010 WL 1424280 (D.Or. 2010), *report adopted* 2010 WL

1424320 (D.Or. 2010) (state unfair claims settlement practice act preempted);

*accord*, Robinson v. AIG Life Ins. Co., 2009 WL 3233474 (E.D.Va. 2009);

*accord*, Eubanks v. Prudential Ins. Co. of America, 336 F.Supp.2d 521

(M.D.N.C. 2004).   As a result, it would be futile to amend the Complaint to

assert these claims and the Motion to Amend will be denied.[1]

## MOTION TO EXCLUDE

On August 5, 2010, Cigna filed an Administrative Record Supplement

which contains the Group Disability Insurance Certificate and Summary Plan

Description (Certificate, SPD and Group Policy) for Policy NYK-980002 issued

by Cigna to Bertelsmann, Inc. in 2004.[2] [Doc. 23].  The Plaintiff objected to the

supplement and moved to exclude it from consideration. [Doc. 27].

In his motion for summary judgment, the Plaintiff argued that the

---

[1]Included in its response to the Motion to Amend, Cigna made a request for attorney's fees on the ground that the motion was frivolous.  Since a separate motion for such fees was not made, the Court will not consider this request.  L.Cv.R. 7.1(C)(2).

[2]The Plaintiff was employed by Sonopress, LLC which is a subsidiary of Bertelsmann, Inc. [Doc. 1-1, at 4].

appropriate standard of review of the plan administrator's decision is *de novo* because the language of the plan does not confer discretionary authority. [Doc. 20, at 10]. On the same day that Cigna filed its response in opposition to the Plaintiff's motion for summary judgment, it filed the supplement to the administrative record which contains the Certificate, SPD and Group Policy.[3] [Doc. 23]. Cigna claims that the Policy contains the requisite language conferring discretionary authority. The Plaintiff cries foul, arguing that it relied on the administrative record previously produced. That record contains an incomplete copy of the insurance certificate and summary plan description. [Doc. 12-9, at 26-31; Doc. 13-1, at 2-32; Doc. 13-2, at 2-7]. The document contained in the administrative record, however, contains the statement under "General Provisions," that the entire contract includes the "certificate" which was not part of the record as originally filed. [Doc. 13-1, at 29]. The Plaintiff has not cited any case law in support of exclusion and does not dispute that the supplement is a true and accurate copy of the actual Certificate, SPD and Group Policy.

Kathleen Tice is employed as an attorney by Cigna in its Members Claim Litigation Unit. [Doc. 30-2, at 2]. In response to the Plaintiff's motion to exclude

---

[3]Cigna has explained that, in this case, the Group Policy is also the SPD. [Doc. 26, at 3].

a copy of the insurance policy, she filed an affidavit stating that:

> [u]pon the initiation of this action, I made an inquiry into what document Bertelsmann, Inc. used as its Summary Plan Description and what other ERISA Plan Documents were available. After repeated requests, the only document provided to me was the Certificate of Group Disability Insurance and Summary Plan Description [contained in the supplement] which I received on June 22, 2010.

[Doc. 30-2, at 3]. Tice provided this to counsel on August 2, 2010. [Id.].

"ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator." Denmark v. Liberty Life Assur. Co. of Boston, 566 F.3d 1, 10 (1st Cir. 2009). When a district court reviews a plan administrator's denial of benefits, it may not consider matters outside the administrative record. "The case law makes clear, however, that the rule was intended to prevent the courts from looking past the evidence of disability - medical reports, correspondence, test results, and the like - considered by the plan administrator; it does not suggest that the rule covers the benefits plan itself, which is in the nature of a contract." Bass v. TRW Employee Welfare Benefits Trust, 86 Fed.Appx. 848, 851 (6th Cir. 2004); accord, Daniel v. UnumProvident Corp., 261 Fed.Appx. 316, 318 (2nd Cir. 2008) (copy of document showing which standard of review was applicable in federal court could be considered although not in administrative record because that "question was not, and could not have been, before the plan administrator");

McTaggart v. United Wisconsin Ins. Co., 625 F.Supp.2d 480, 483 (E.D.Mich. 2007) (court not precluded from examining the plan simply because it was not included in the administrative record). Indeed, the Plaintiff refers to the Group Policy in his Complaint although he did not attach a copy thereof. [Doc. 1-1, at 4]. When a Plan document is referenced in the complaint but no copy is attached, the defendant may submit an authentic copy. Clark v. BASF Corp., 142 Fed.Appx. 659, 661 (4th Cir. 2005). As previously noted, the Plaintiff does not dispute the authenticity of the Certificate, SPD and Group Policy submitted to supplement the record. The Court will therefore allow the supplement.

## STANDARD OF REVIEW

Before ruling on the cross-motions for summary judgment, it is necessary to determine the appropriate standard of review to be applied to the decision of the plan administrator. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994).

> In [Metropolitan Life Insurance Co. v.] Glenn, [554 U.S. 105, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008)], the [Supreme] Court held that judicial review of an ERISA plan administrator's decision is "under a *de novo* standard unless the plan provides to the contrary." But when plan language grants the administrator discretionary authority, review is conducted under the familiar abuse-of-discretion standard. [T]he Glenn Court also held that the administrator's conflict of interest did not change the standard of review from the deferential review, normally applied in the review of discretionary decisions, to a *de novo* review, or some other hybrid standard. Indeed, the Court stated more broadly that the conflict of interest should not lead to "special burden-of-proof rules,

or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." Rather, a conflict of interest becomes just one of the "several different, often case-specific, factors" to be weighed together in determining whether the administrator abused its discretion.

Carden v. Aetna Life Insurance Co., 559 F.3d 256, 260 (4th Cir. 2009) (citations omitted).

The Bertelsmann, Inc. Group Disability Insurance Certificate (Plan) provides that the Plan Administrator is the Welfare Benefit Plan Committee c/o Bertelsmann, Inc. (Committee). [Doc. 23, at 27].

The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, NYK-980002, issued by Cigna Life Insurance Company of New York.

...

The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy.

...

The Plan of benefits is financed by: Company contributions and Employee contributions.

...

The Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.

[Id., at 27-28].

From these Plan provisions, it is clear that the Plan "vests in its administrator[ ] discretion either to settle disputed eligibility questions or construe doubtful provisions of the Plan." Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000). In fact, here, "the plan's language expressly creates discretionary authority" and thus, the Court "will find discretionary authority in the administrator." Id. Since the Plan provides for "discretionary authority to determine eligibility for benefits," "a deferential standard of review is appropriate." Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353, 358 (4th Cir. 2008), quoting Glenn, 128 S.Ct. at 2348; Blackshear v. Reliance Std. Life Ins. Co., 509 F.3d 634, 638 (4th Cir. 2007) (district court makes a de novo determination whether the plan documents confer discretionary authority on the administrator; if so, court reviews for abuse of discretion).

The Insurance Company, Cigna, operates under a conflict of interest because it has the authority to make the administrative decisions and it pays the benefits, but Glenn makes any such conflict merely a factor to consider regarding a possible abuse of discretion. The Glenn Court held that when a fiduciary serves as both the administrator; that is, the evaluator, and the funder; that is, payor, of the Plan, a conflict of interest occurs. Glenn, 238 S.Ct. at 2348-49.

As it now stands after <u>Glenn</u>, a conflict of interest is readily determinable by the dual role of an administrator or other fiduciary, and courts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by that administrator, even if the administrator operated under a conflict of interest. Under that familiar standard, a discretionary determination will be upheld if reasonable. And any conflict of interest is considered as one factor, among many, in determining the reasonableness of the discretionary determination. In <u>Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan</u>, 201 F.3d 335 (4th Cir. 2000), [the Fourth Circuit] identified eight nonexclusive factors that a court may consider, including a conflict of interest:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

<u>Champion</u>, 550 F.3d at 359, *quoting* <u>Booth</u>, 201 F.3d at 342-43.

## THE INITIAL DETERMINATION & APPEAL

Ward was hired by Sonopress, Inc. in July 1989 as an electric service technician. [Doc. 12-1, at 4]. His last day of work was April 20, 2005. [<u>Id</u>.]. He received long-term disability benefits under the Plan from October 22, 2005 through October 21, 2007 because he was medically unable to perform the material duties of his regular occupation due to injury or sickness. [<u>Id</u>.; Doc. 13-

1, at 14]. Ward suffered from back pain, stemming from congenital scoliosis and stenosis aggravated by the amputation of his left leg above the knee. [Doc. 20, at 1-2]. After the initial twenty-four month period of disability benefits, Ward was eligible to continue to receive long-term disability benefits if he was "unable to perform the material duties of any occupation for which he ... may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he ... is unable to earn more than 80% of his ... Indexed Covered Earnings." [Id.].

On June 20, 2007, Cigna notified Ward that it had determined he no longer remained disabled under the definition of the Plan which applied after the initial twenty-four month period. [Doc. 13-2, at 23]. In support of that decision, Cigna's representative wrote:

> Doctor Burke would not comment on your functional capacity since he has not seen you since 12/11/06. His last note from 12/11/06 indicated that you have been getting aquatic therapy. It was noted you were referred to Doctor Berkwits for an epidural injection but Doctor Berkwits did not think it would be helpful. It was noted that you had an above knee amputation on the left which results in a somewhat halting gait pattern. It was noted that you were still disabled from work and were to be seen again in 6 months.
>
> We received an office note from Doctor Dement dated 1/8/07. It was mentioned that you continued to have significant back pain, some weakness in your buttocks and thighs when you walk too far. It was noted that your left prosthesis had stressed the lumbar spine over the years. On examination there was tenderness at the L/5 junction, some pain on hyperextension with lateral bend, severe spinal stenosis with dramatic lumbar degenerative disc

disease. Doctor Dement commented that you still could not return to work and were to be seen again in six months.

Doctor Feiler had sent to us a note dated 4/19/07 indicating that you could not return to work in your regular medium occupation due to chronic low back pain.

Because we had no information in regards to your functional capacity we had sent you for a Functional Capacity Evaluation on 5/24/07. The results of the Functional Capacity Evaluation indicated that you had the functional capacity to perform a light occupation.

On 6/11/07 we had sent the result of the Functional Capacity Evaluation to Doctor Dement, Doctor Burke, and Doctor Feiler for comment with a deadline of 6/19/07. As of 6/20/07 we have not received a response from any of your doctors.

...

[B]ased upon the available medical information, we have concluded that your condition is not severe enough to satisfy the Any Occupation Definition of Disability under [the Plan]. The results of the Functional Capacity Evaluation dated 5/24/07 revealed that you have the functional capacity to perform in a light occupation and a Transferable Skills Analysis revealed light occupations that you are qualified to perform.

[Doc. 13-2, at 23-24].

In the meantime, Ward had applied for Social Security Disability benefits which were awarded on June 20, 2006. [Doc. 13-3, at 23-33]. At that time, the Administrative Law Judge found that Ward had "the residual functional capacity to stand and walk a maximum total of one hour in a workday, to sit a maximum total of one hour in a workday and to lift and carry a maximum of less than 10 pounds." [Id., at 26]. He also found that Ward had the "exertional

capacity for significantly less than a full range of sedentary work." [Id.].

## THE SECOND APPEAL

On July 9, 2007, Cigna notified the Plaintiff that it had received his appeal from its adverse decision. [Doc. 13-2, at 21]. On September 25, 2007, the Plaintiff was notified that Cigna had denied his appeal. [Doc. 13-4, at 6-8]. Cigna advised that notes from his treating physicians dated June 21 and 25, 2007 were considered and that his claim was reviewed by a Medical Director. [Id., at 7].

> [T]he Functional Capacity Evaluation performed on May 24, 2007 indicated that you have sedentary to light abilities. A Transferable Skills Analysis identified suitable transferable occupations which you could perform. You have left leg prosthesis due to an above knee amputation at the age of 18 months and the lumbar MRI of April 19, 2004 indicated a congenital fusion at L1 and L2. The Medical Director opined the medical [sic] does not support the restrictions as provided by your physicians.
>
> While the letters from your attending physicians indicated that you cannot work, this does not change the fact that you have abilities to perform at the light level of physical demands. As a result, the medical information on file does not support disability as defined in the policy; therefore, we must affirm our previous decision to deny benefits under this plan[.]

[Id.].

The denial letter included a notice that the Plaintiff could "request a review of this decision by writing to" Cigna within 180 days of receipt. [Id., at 7]. The Plaintiff was also advised that he could bring separate legal action.

15

[Id., at 8].

On March 19, 2008, within the 180 day period, the Plaintiff appealed a second time through counsel. [Doc. 13-3, at 13-14]. Cigna acknowledged receipt of this appeal and advised him several times of the status of the appeal process. [Doc. 13-2, at 9-11, 13]. Although Cigna claims the second appeal was considered and denied, it admits that the Plaintiff was never notified of the resolution of the appeal and it has no documentation to support the consideration and denial of the appeal. [Doc. 26, at 8].

## DISCUSSION

> In the case of the failure of a plan to ... follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. §2560.503-1(l).

Neither party contests that this regulation allowed the Plaintiff to initiate this action. The Plaintiff, however, argues that Cigna's failure to rule on this second appeal should be deemed a denial of the appeal, thus triggering a *de novo* review of that denial by this Court.[4] Cigna argues that its procedural

---

[4]In what manner this Court could review a decision never rendered is not explained. It appears that the Plaintiff would bootstrap *de novo* review onto the initial appeal decision. Plaintiff, however, did not articulate any basis for doing so.

omission involving the second appeal should result in a remand for reconsideration.

"'[W]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled,'" remand to the plan administrator is the appropriate remedy. Helfman v. GE Group Life Assur. Co., 573 F.3d 383, 396 (6th Cir. 2009). "There is no question that this court has the power to remand to the claims administrator[.]" Elliott v. Metropolitan Life Ins. Co., 473 F.3d 613, 621 (6th Cir. 2006). "Where there has been a problem in a plan administrator's decision making process, but it is not clear that the plan participant is entitled to benefits, the appropriate remedy is to remand" for a "full and fair inquiry." Blajei v. Sedgwick Claims Management Services, Inc., 721 F.Supp.2d 584, 611 (E.D.Mich. 2010), citing Helfman, supra. Thus, even when the failure to follow the decision-making process properly is "deemed" a denial, the issue is whether it is clear that the plan participant is entitled to the benefits.

Ward cites Nichols v. Prudential Ins. of America, 406 F.3d 98, 105 (2nd Cir. 2005), in support of his position that failure to follow the decision-making process in a proper manner is deemed a denial of the claim which is subject to de novo review by the district court. The Second Circuit there held that, absent substantial compliance by the plan administrator, de novo review

applies when inaction constitutes a lack of exercise of any discretion. [Id., at

109-110].

The Fourth Circuit, however, has taken a different approach.

ERISA requires that every employee benefit plan "provide
adequate notice in writing to any participant or beneficiary whose
claim for benefits ... has been denied, setting forth the specific
reasons for such denial." 29 U.S.C. §1133 (2008). The Plan must
further "afford a reasonable opportunity to any participant whose
claim benefits has been denied a full and fair review by the
appropriate named fiduciary of the decision denying the claim." Id.
... Without this opportunity to make a meaningful administrative
record, courts could not properly perform the task of reviewing
such claims, a specific function entrusted to the courts by ERISA.
... Procedural guidelines are at the foundation of ERISA and "full
and fair review must be construed ... to protect a plan participant
from arbitrary or unprincipled decision-making."

...
[There is] no provision in ERISA, or otherwise, which would permit
the district court, by judicial fiat, to abrogate and nullify a claimant's
validly existing statutory entitlements under ERISA.

Gagliano v.Reliance Standard Life Insurance Co., 547 F.3d 230, 235-36 (4th

Cir. 2008), *certiorari denied* 129 S.Ct. 2735, 174 L.Ed.2d 247 (2009) (citations

omitted). The Fourth Circuit also rejected the view that simply leaving a matter

open for the submission of additional evidence constitutes substantial

compliance with the requirement that the insurer provide a clear notice of the

right to appeal. Id., at 237-38.

Here, in the second appeal letter, the Plaintiff's attorney noted that

despite having followed the procedures dictated by Cigna, counsel had not

received access to Cigna's claim file for the Plaintiff. [Doc. 13-3, at 13]. Counsel therefore was unsure whether Cigna had received and considered the medical records from Drs. Cook, Dement and Felier in which those physicians had opined the Plaintiff was completely and permanently disabled. [Id.]. As a result, those records were resubmitted to Cigna with the second appeal. [Id.]. Counsel also noted that as of June 2007, the Plaintiff continued to be assessed permanently disabled by Dr. Dement and had been determined to be disabled by the Social Security Administration. [Id.]. Counsel concluded with the statement that "since I have not seen your file, I can only guess at what you were relying on in making your decision." [Id., at 14]. As previously noted, the parties agree that Cigna did not provide a written decision to Ward concerning this second appeal. It is noted that neither party argues that Cigna substantially complied with ERISA's appeal procedures. The Court is, therefore, compelled to conclude that Cigna failed to comply with the procedural requirements of ERISA. Gagliano, 547 F.3d at 237.

The Court must then address what remedy is appropriate for this procedural violation of ERISA. Id. Ward argues that this Court should review the second appeal as a deemed denial and because there was no exercise of discretion, this denial should be reviewed pursuant to a *de novo* standard. Cigna, however, argues that because a "full and fair review" of the second

appeal was not completed, remand is the appropriate remedy.

Acceptance of Plaintiff's position, however, would require the Court to conclude that this procedural ERISA violation entitled Plaintiff to the substantive relief of an award of benefits. Gagliano, 547 F.3d at 239. The Fourth Circuit has explicitly rejected this position.

> Even though [Cigna] failed to provide [Ward] with the proper appeals [determination] required by ERISA in the [second appeal], that procedural violation cannot afford [Ward] a substantive remedy if [he] has no entitlement to benefits under the terms of the Plan. In cases where there is a procedural ERISA violation, we have recognized the appropriate remedy is to remand the matter to the plan administrator so that a "full and fair review" can be accomplished. "Normally, where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand[.] The only exception to that rule would be where the record establishes that the plan administrator's denial of the claim was an abuse of discretion as a matter of law[,] ... [as for example,] where the insurer "produced no evidence that it even remotely considered any specific reasons in denying the claim."

Gagliano, 547 F.3d at 240.

Here, in denying the initial appeal, Cigna cited its Medical Director's determination that the Plaintiff could perform a range of light work. As a result, Ward was never approved for long-term disability benefits under the second definition of "disabled" under the Plan. In other words, there is no substantive benefit which may be reinstated by this Court on review. Id., at 240-41.

There is no legal basis to order the payment of benefits as a

> penalty for violation of the procedural requirements of ERISA. ...
> The flaw in holding otherwise is that a plaintiff is *more* than made
> whole-and indeed receives a windfall-if after proper procedures it
> is determined that the plaintiff was not entitled to the benefits that
> the administrator [denied] with flawed procedures.

Id., at 241; *accord*, Brown v. J.B. Hunt Transport Services, Inc., 586 F.3d 1079,

1085 (8th Cir. 2009) ("The appropriate remedy for Prudential's violation of

§1133(2) is not an award of benefits from this court" but a remand); Lafleur v.

Louisiana Health Service and Indem. Co., 563 F.3d 148, 157 (5th Cir. 2009);

Wertheim v. Hartford Life Ins. Co., 268 F.Supp.2d 643, 660-65 (E.D.Va. 2003).

In summary, the Court will remand this matter to the Plan Administrator

for further proceedings not inconsistent with this decision.  The Court retains

jurisdiction over this matter so that further judicial review, if necessary, may be

accomplished within the context of this action.  See, *e.g.*, Giraldo v. Building

Service 32B-J Pension Fund, 502 F.3d 200 (2nd Cir. 2007); 29 U.S.C. §§1332

& 1333.  In their cross motions for summary judgment both parties have

asserted that they are entitled to judgment as a matter of law.  Since this

remand entails neither a granting nor a denial of benefits, the cross motions

must be denied.  Thus, to the extent the parties seek an award of attorney's

fees, that request may be made on motion at the appropriate time.

# ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Amend Complaint [Doc. 17] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Exclude [Doc. 27] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 19] is hereby **DENIED** without prejudice to renewal.

**IT IS FURTHER ORDERED** that Cigna Life Insurance Company of New York's Cross-Motion for Summary Judgment [Doc. 25] is hereby **DENIED** without prejudice to renewal.

**IT IS FURTHER ORDERED** that this matter is hereby **REMANDED** to the Plan Administrator and its fiduciary for the Defendant for further proceedings not inconsistent with this Order.

Signed: March 9, 2011

Martin Reidinger
United States District Judge